UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

DAVID A. GAMBINO,

Plaintiff,

v.

AHSA CASSANO, et al.,

Defendants.

Civil No. 17-0830 (NLH) AMD)

OPINION

APPEARANCES:

David A. Gambino
19757055
115 Shepard Ave
Kenmore, NY 14217

        *Plaintiff Pro Se*

Rachael A. Honig, Acting United States Attorney
Susan Millensky, Assistant United States Attorney
U.S. Attorney's Office for the District of NJ
970 Broad Street
Suite 700
Newark, NJ 07102

        Attorneys for Defendant AHSA Cassano, Bureau of Prisons
Central Office, Counselor Centeno, Counselor Jose, Ibe, IDC RN
Copeland, Medical Officer K. Engert, Northeast Office Bureau of
Prisons, Officer Hamel, RN Fletcher, RN Maruska, RN Wawrzyniak,
RN West, Unit Manager O'Cone, Warden Ortiz

HILLMAN, District Judge

        Plaintiff David Gambino is proceeding on a second amended

complaint raising a litany of claims against various federal

persons and entities.  ECF No. 135.  Defendants AHSA Cassano,

Bureau of Prisons Central Office, Counselor Centeno, Counselor
Jose, Ibe, IDC RN Copeland, Medical Officer K. Engert, Northeast
Office Bureau of Prisons, Officer Hamel, RN Fletcher, RN
Maruska, RN Wawrzyniak, RN West, Unit Manager O'Cone, Warden
Ortiz (collectively "Defendants") now move to dismiss the
amended complaint in part.  ECF No. 120.  Plaintiff opposes the
motion and moves to stay the proceedings for thirty days.  ECF
Nos. 151 & 157.  For the following reasons, the Court will grant
the motion to dismiss in part.  The motion for a stay will be
dismissed as moot.

I.    BACKGROUND

    Plaintiff filed a pro se complaint.  ECF Nos. Docket No. 1
& 14.  At that time, Plaintiff was an inmate at FCI Fort Dix in
New Jersey.  The Court permitted the complaint to proceed in
part on March 20, 2017.  ECF No. 3.

    Defendants filed a motion for summary judgment on July 7,
2017 seeking dismissal on the grounds that Plaintiff failed to
exhaust his administrative remedies.  ECF No. 12.  Shortly
thereafter, Plaintiff filed a motion to amend the complaint and
a "supplemental" complaint which consisted of 45 defendants, was
95 pages long, and asserted claims pursuant to Bivens v. Six
Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388
(1971), the Federal Tort Claims Act, and the Americans with
Disabilities Act.  ECF No. 14.  The Court granted the motion to

2

amend as Defendants conceded Plaintiff was permitted to amend his complaint under Federal Rule of Civil Procedure 15.  ECF No. 36.  The Court indicated it would treat the "supplemental" complaint as the operative pleading.  Id. ¶ 2.

Defendants moved to dismiss the amended complaint on May 14, 2018.  ECF No. 69.  On July 19, 2018, Plaintiff moved to amend his complaint again and requested the appointment of pro bono counsel.  ECF No. 88.  Magistrate Judge Donio granted Plaintiff's requests to amend the complaint and for the appointment of pro bono counsel.  ECF No. 99.  The appointment of counsel was limited to the purpose of addressing the motion to dismiss.  Id.  All pending motions were denied without prejudice until counsel could be appointed for Plaintiff.  ECF No. 100.

Once counsel had been appointed, Defendants refiled their motion to dismiss on March 29, 2019.  ECF No. 120.  Pro bono counsel filed opposition to the motion to dismiss and requested permission to file a second amended complaint if the Court were inclined to grant the motion to dismiss.  ECF No. 124.  Finding that a streamlined complaint would be in the interests of justice, the Court dismissed Defendants' motion without prejudice and granted Plaintiff leave to file a third amended complaint.  ECF No. 131.  Pro bono counsel then requested to be relieved as counsel as the appointment had been limited to

3

opposing the motion to dismiss.  ECF No. 132.  In response, on
October 28, 2019, Plaintiff filed a letter requesting, among
other things, that his case move forward without appointed pro
bono counsel, and that he be provided with 60 days to file a
second amended complaint.  ECF No. 133.  Plaintiff filed his
second amended complaint on November 21, 2019.  ECF No. 135.

On November 27, 2019, the Defendants filed a letter noting
that Plaintiff's second amended complaint is identical to the
first four claims included in the nine-count complaint that was
filed in 2017.  ECF No. 136.  They asked the Court to reopen
their prior moving brief, Docket No. 120, so that they could
renew that motion to dismiss as to Counts One through Four of
the pleading.  Defendants stated that they made this request
because a newly filed motion would be identical to the one
previously filed, save for deletion of the parts that solely
address claims Five through Nine, and if Plaintiff had intended
to refile his prior amended complaint in full, the Government's
motion would be wholly identical to its prior one.  The Court
granted pro bono counsel's withdrawal request and directed the
Defendants to decide how to proceed on their motion within 30
days.  ECF No. 137.  Defendants renewed their motion on December
16, 2019.  ECF No. 140.

In early 2020, Plaintiff moved for the appointment of new
pro bono counsel and for a stay of proceedings until October

2020 when he would be released from Bureau of Prisons ("BOP") custody.  ECF Nos. 139, 141-42.  He alleged that BOP officials were denying him stamps to send mail.  ECF No. 139 at 1.  The Court denied a stay of the proceedings but granted an extension of time for Plaintiff to submit opposition to the renewed motion to dismiss.  ECF No. 143.  That extension was granted with the understanding that the motion to dismiss, ECF No. 120, would be reinstated on July 24, 2020, the date Plaintiff's opposition was due.  The Court "acknowledge[d] that access to the law library may be limited due to steps taken to prevent the spread of the COVID-19 virus, but reminds Defendants that prisoners have a First Amendment right of access to the courts, which includes reasonable access to legal research materials.  Moreover, prisons must provide prisoners with 'paper and pen to draft legal documents and stamps to mail them.'"  ECF No. 143 at 3 (quoting Bruce v. Samuels, 136 S. Ct. 627, 632 (2016)).  Magistrate Judge Donio later denied Plaintiff's pro bono request.  ECF No. 150.

Instead of filing opposition to the motion to dismiss, Plaintiff filed a letter stating that the BOP was retaliating against him for pursuing this litigation and would prevent his release if he continued with the complaint.  ECF No. 147.  He therefore stated he wanted to voluntarily dismiss the case "under duress."  Id. at 4.  The Court denied the request under

Federal Rule of Civil Procedure 41(a)(1) as Plaintiff had been released to a halfway-house facility and was no longer under the supervision of FCI Gilmer officials whom – he as alleged – interfered with his ability to file opposition to Defendants' motion.  ECF No. 148.

Plaintiff submitted his opposition to the motion shortly thereafter.  ECF No. 151.  Defendants filed their reply.  ECF No. 154.[1]  After the motion was fully briefed, Plaintiff filed a motion for a thirty-day abeyance as he was diagnosed with COVID-19.  ECF No. 157.

II.  STANDARD OF REVIEW

Courts must liberally construe pro se pleadings.  Higgs v. Atty. Gen. of the U.S., 655 F.3d 333, 339 (3d Cir. 2011) (citing Estelle v. Gamble, 429 U.S. 97, 106 (1976)).  However, to survive a motion to dismiss, pro se litigants must still comply with federal pleading standards.  See Thakar v. Tan, 372 F. App'x 325, 328 (3d Cir. 2010).

When considering a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), Courts accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the non-moving party.  Connelly v.

---

[1] The Court will not consider Plaintiff's sur-reply as Plaintiff did not seek leave to file to file one.  ECF No. 155.  See Local Civ. R. 7.1 (d)(6).

Lane Const. Corp., 809 F.3d 780, 790 (3d Cir. 2016).  A Court may grant a motion to dismiss only if the plaintiff fails to allege sufficient factual matter, to "state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 444, 570 (2007)).  A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.

III. DISCUSSION

     Plaintiff's opposition asserts he is proceeding on nine claims.  Plaintiff's second amended complaint that was docketed on November 21, 2019 is divided into four "claims" each with several subparts.  ECF No. 135.  "[A]n amended pleading . . . supersedes the earlier pleading and renders the original pleading a nullity."  Palakovic v. Wetzel, 854 F.3d 209, 220 (3d Cir. 2017) (citing W. Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank, 712 F.3d 165, 171 (3d Cir. 2013); 6 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1476 (3d ed. 2010)).  "[T]he original pleading, once superseded, cannot be utilized to cure defects in the amended pleading, unless the relevant portion is specifically incorporated in the new pleading."  Wright & Miller § 1476.

The second amended complaint is captioned as an "amended
complaint" and states Plaintiff wished to "start all over" due
to his frustration with his court-appointed counsel.  Id. at 2.
Because Plaintiff did not specifically incorporate the first
amended complaint into the second amended complaint, the first
amended complaint is null and void.  The second amended
complaint is the operative pleading.

A.   Count One

Plaintiff brings this claim against Warden Ortiz, Special
Housing Unit ("SHU") Officers John Does 1-4, SHU Lieutenant John
Doe, SHU Intake Psychologist Jane Doe, and Unit Manager O'Cone.
ECF No. 135 at 9.  He captions this claim as "Special Housing
Unit Conditions of Confinement, Religious Violations,
Sanitation, Lack of Panic Button and Oversight, Failure to
Protect, Abuse of Mental Health Patient."  Id.  Defendants seek
to dismiss this claim on the grounds that Ziglar v. Abbasi, 137
S. Ct. 1843 (2017) cautions against the extension of the Bivens
remedy, they are entitled to qualified immunity on the claims,
any claim for equitable relief is moot, and he has failed to
state a claim under the Federal Tort Claims Act.  ECF No. 120 at
15.

1.   Access to the Courts

Plaintiff alleges Defendants violated his right to access
the courts by "denying needed Grievance forms needed to be filed

8

'timely' for access to the Courts according to the Prison Litigation Reform Act . . . . Defendants denials caused constructive denial of accessing the court by PLRA barring that occurs after the Defendants denials are exhausted."  ECF No. 135 at 10.  The Court will dismiss this claim.  "Prisoners do not have a constitutional right to prison grievance procedures. Thus, defendants' alleged obstruction of such procedures is not independently actionable." Heleva v. Kramer, 214 F. App'x 244, 247 (3d Cir. 2007)(citing Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001)).  Failure to provide grievance forms or respond to properly filed grievances may impact the availability of the remedies under the PLRA, but that is an issue for another time as exhaustion is not a PLRA pleading requirement.  For purposes of the motion to dismiss, Plaintiff has failed to state a claim for alleged interference with prison remedies.

The Court will also dismiss Plaintiff's access claim based on denial of access to the law library.  The Supreme Court's decision in Ziglar v. Abbasi, 137 S. Ct. 1843 (2017) "created a funnel through which plaintiffs alleging constitutional violations by federal officials must pass." Alexander v. Ortiz, No. 15-6981, 2018 WL 1399302, at *4 (D.N.J. Mar. 20, 2018), aff'd, 807 F. App'x 198 (3d Cir. 2020).  First, the Court must determine whether the cause of action presents a "new context" for Bivens cases.  If it does, the Court must determine whether

9

there are special factors counselling against extending the
Bivens remedy to the new cause of action. "[E]xpanding the
Bivens remedy is now a 'disfavored' judicial activity." Abbasi,
137 S. Ct. at 1857.

"[T]he 'proper test' for determining whether a case
presents a new Bivens context is if the Supreme Court has not
previously recognized a claim in that context.  A context is
'new' if it implicates a constitutional right not previously
recognized by the Supreme Court." Mack v. Yost, 968 F.3d 311,
320 (3d Cir. 2020).  The Supreme Court has never recognized a
Bivens remedy for First Amendment claims.  See Reichle v.
Howards, 566 U.S. 658, 663 n.4 (2012) ("We have never held that
Bivens extends to First Amendment claims.").

Plaintiff cites to this Court's reference to Bruce v.
Samuels, 136 S. Ct. 627, 632 (2016) for the proposition that
Bivens extends to claims alleging failure to provide access to
the law library and legal materials.  ECF No. 151 at 6.
Plaintiff misunderstands.  Bivens is not a source of substantive
rights; it is a remedy.  To say something is a Bivens claim is
simply to identify the method by which a plaintiff seeks relief
from violations of federal rights by federal employees.  Abbasi
instructs courts to only extend that remedy to new rights in
rare circumstances.  Prisoners do have rights to legal materials
and access to law libraries, but Bruce did not extend the Bivens

10

remedy for damages to claims of violations of those rights. Plaintiff's claim presents a new context, and the Court must consider whether special factors counsel against extending the Bivens remedy.

Post-Abbasi, the Third Circuit has concluded that "[t]wo special factors are 'particularly weighty': the availability of an alternative remedial structure and separation-of-powers concerns." Mack, 968 F.3d at 320. An alternative remedial structure exists for Plaintiff's access claim because Plaintiff can petition the Court for injunctive relief. See Abbasi, 137 S. Ct. at 1862 (noting "detainees may seek injunctive relief" for claims concerning conditions of confinement). Therefore, it is not "damages or nothing." Id. "The Supreme Court has noted that 'when alternative methods of relief are available, a Bivens remedy usually is not. Thus, the availability of an alternative remedial structure may, on its own, prevent courts from expanding Bivens." Mack, 968 F.3d at 320 (quoting Abbasi, 137 S. Ct. at 1863). The Court concludes the availability of injunctive relief is a special factor that precludes extending the Bivens damages remedy to an access to the court's claim such as Plaintiff's. In this case Plaintiff's request for injunctive relief is moot because he has been released from BOP custody, but that does not justify extending Bivens to this kind of claim. The Court will dismiss this claim.

2.   Religious Claims

Plaintiff also alleges in Count One that Defendants denied his request for a towel so he could clean himself before his daily prayers.  "Plaintiffs religion was burdened when forced to pray on a dirty floor that smelled of urine and feces. Defendants violated Plaintiff's rights to practice his religion of Judaism by forcing him to pray dirty 5 times a day for over 4 weeks."  ECF No. 135 at 10.  A First Amendment Free Exercise claim is also a new <u>Bivens</u> context.  The Court concludes that the availability of relief under the Religious Freedom Restoration Act of 1993 ("RFRA") 42 U.S.C. § 2000bb is a special factor counselling hesitation in extending the <u>Bivens</u> remedy. <u>See</u> <u>Mack v. Warden Loretto FCI</u>, 839 F.3d 286, 305 (3d Cir. 2016) (declining to extend <u>Bivens</u> to Muslim inmate's Free Exercise claim since there was an alternative remedial scheme available to inmate under the RFRA).

RFRA permits Plaintiff to seek injunctive relief and monetary damages for violations of his religious rights.  <u>Tanzin v. Tanvir</u>, 141 S. Ct. 486 (2020).  Any request for injunctive relief would be moot due to his release, but a damages remedy would still be available.  "Congress enacted RFRA in order to provide greater protection for religious exercise than is available under the First Amendment."  <u>Holt v. Hobbs</u>, 574 U.S. 352, 357 (2015).  RFRA "prohibits the Federal Government from

taking any action that substantially burdens the exercise of religion unless that action constitutes the least restrictive means of serving a compelling government interest." Burwell v. Hobby Lobby Stores, Inc., 573 U.S. 682, 690-91 (2014).

To state a RFRA claim, Plaintiff must allege facts that indicate that the federal government substantially burdened a sincerely held religious belief.  "[A] substantial burden exists where: 1) a follower is forced to choose between following the precepts of his religion and forfeiting benefits otherwise generally available to other inmates versus abandoning one of the precepts of his religion in order to receive a benefit; OR 2) the government puts substantial pressure on an adherent to substantially modify his behavior and to violate his beliefs." Washington v. Klem, 497 F.3d 272, 280 (3d Cir. 2007).  Plaintiff has sufficiently alleged that not being able to wash before praying substantially burdened his religious beliefs, but he has not sufficiently alleged the personal involvement of any of the Defendants.

"[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009).  Plaintiff has not identified Defendants' personal involvement by stating what actions each Defendant took that violated his religious right.  In his opposition papers,

Plaintiff argues that the names of specific officers are being withheld from him.  ECF No. 151 at 17.  However, Plaintiff does not use fictious identities to identify the actions, for example alleging that Officer John Doe refused to provide Plaintiff with a towel on a certain date, nor does he identify the actions of persons whose names he clearly knows, such as Warden Ortiz and Unit Manager O'Cone.  Since Plaintiff has not met this pleading requirement, this claim shall be dismissed.  Fed. R. Civ. P. 12(b)(6).

3.   Conditions of Confinement

Plaintiff further alleges that he was placed into the SHU upon his arrival at Fort Dix and was "subjected to a filthy room that smelled of urine and feces: and was "dim like a dungeon . . . ."  ECF No. 135 at 9.  Id.  He claims the room was freezing and wet and only had 1 blanket and sheet.  Id.  Plaintiff also alleges that inmates were housed in overcrowded conditions.  Id.

Courts are divided as to whether the Supreme Court has extended the Bivens remedy to Eighth Amendment conditions of confinement claims.  See Schwarz v. Meinberg, 761 F. App'x 732, 733-34 (9th Cir.), cert. denied, 140 S. Ct. 468 (2019) (holding "unsanitary cell conditions. . . claims do not fall within claims authorized by the Supreme Court."); Walker v. Schult, 463 F. Supp. 3d 323, 330 (N.D.N.Y.) ("prison condition case does not present a 'new context'"), appeal filed 20-2415 (2d Cir. July

14

30, 2020).  The Third Circuit has not ruled on this precise issue, but it did hold that Farmer v. Brennan, 511 U.S. 825 (1994) extended Bivens to failure to protect claims under the Eighth and Fifth Amendments.  "[A]n inmate's claim that prison officials violated his . . . rights by failing to protect him against a known risk of substantial harm does not present a new Bivens context."  Bistrian v. Levi, 912 F.3d 79, 90 (3d Cir. 2018).  The Supreme Court recognized a Bivens remedy for violations of the Eighth Amendment right to adequate medical care in Carlson v. Green, 446 U.S. 14 (1980).  An Eighth Amendment challenge to the conditions of confinement uses the same deliberate indifference standard articulated in Carlson and Farmer.  Therefore, the Court concludes the Bivens remedy extends to Eighth Amendment conditions of confinement claims.

To state an Eighth Amendment conditions of confinement claim, Plaintiff must provide facts suggesting "that (1) the deprivation alleged was objectively, 'sufficiently serious' such that the prison officials' acts or omissions resulted in the denial of 'the minimal civilized measure of life's necessities'; and (2) that the prison officials exhibited a 'deliberate indifference' to his health and safety."  Barndt v. Wenerowicz, 698 F. App'x 673, 677 (3d Cir. 2017) (quoting Farmer, 511 U.S. at 834).  As with his other Count One claims, Plaintiff does not provide factual allegations as to Defendants' personal

15

involvement.  Plaintiff's arguments in his opposition papers are insufficient as the allegations must be in the second amended complaint.

Moreover, Plaintiff has not provided any facts that would support an inference of deliberate indifference.  "[T]he standard for determining deliberate indifference in a conditions of confinement case is whether a prison official knew of and disregarded an excessive risk to an inmate's health or safety." Mitchell v. Dodrill, 696 F. Supp. 2d 454, 467 (M.D. Pa. 2010) (citing Farmer, 511 U.S. at 837).  In the absence of facts setting forth what actions each Defendant did or did not take, the Court cannot infer that Defendants were deliberately indifferent to Plaintiff's health or safety.

Plaintiff also alleges Defendants were deliberately indifferent to his mental health needs by placing him in a cell without a panic button and frequently leaving him alone for 2 hours or more.  ECF No. 135 at 9-10.  He states this violated his Eighth Amendment rights because he was placed into that cell right after he came off suicide watch.  Id.  "Defendants left Plaintiff in a cell with 'no' observation, and no frequent observations - thus leaving the Plaintiff unsafe and unprotected for 4 weeks."  Id.  Again, Plaintiff has not provided any facts setting forth how each Defendant was personally involved in the alleged violation.

16

The Court will dismiss Count One in its entirety.

B.   Count Two

In his second claim, Plaintiff alleges Warden Ortiz,
Officer Hamel, Unit Manager O'Cone, Counselor Centeno, and
Counselor Jose obstructed Plaintiff's "Ability to Access the
Court Through Constructive Procedural Baring Pursuant to the
Prison Litigation Reform Act."  ECF No. 135 at 12.

Plaintiff alleges these defendants "refused to respond to
Grievance Requests verbally and in writing.  Defendants also
gave 'false' information on 'who' and 'when' grievances can be
obtained, processed, and legally mailed."  Id.  Plaintiff
asserts that Unit Manager O'Cone never responded to Plaintiff's
requests for help filing grievances, Officer Hamel told
Plaintiff's his counselor was responsible for giving Plaintiff
the forms, and Counselors Centeno and Jose denied his grievances
as being untimely.  Id.  As previously discussed, "[p]risoners
do not have a constitutional right to prison grievance
procedures.  Thus, defendants' alleged obstruction of such
procedures is not independently actionable."  Heleva v. Kramer,
214 F. App'x 244, 247 (3d Cir. 2007)(citing Massey v. Helman,
259 F.3d 641, 647 (7th Cir. 2001)).  The Court will dismiss this
claim in its entirety as well.

C.   Count Three

17

Plaintiff alleges in his third claim that AHSA Cassano and Warden Ortiz failed to provide him with adequate medical attention, causing him to contract a MRSA infection.[2]  ECF No. 135 at 14.  "Plaintiff had explained to AHSA Cassano that when he frequently falls and defecates in his adult diapers, he is left with using his bare hands to wipe and scoop away feces that gets squashed under and all around the Plaintiff's buttocks, legs, testicles and backside."  Id.  "AHSA Cassano refused to supply the patient with accommodations and stated that he would 'be asking for toothpaste and toothbrush next.'"  Id.  Plaintiff states Warden Ortiz "backed" AHSA Cassano's decision.  Id.  He alleges this violated the Americans with Disabilities Act and the Eighth Amendment.

The Court will deny the motion to dismiss the Eighth Amendment claim.  Plaintiff has sufficiently alleged he had a serious medical need that AHSA Cassano and Warden Ortiz knew of intentionally refused to treat.  This claim shall proceed.

Plaintiff has not stated a claim under the Americans with Disabilities Act ("ADA") as the ADA does not apply to the executive branch.  However, section 504 of the Rehabilitation Act does apply.  Under the Rehabilitation Act, "[n]o otherwise qualified individual with a disability in the United States . .

---

[2] Denial of adequate medical care is an established Bivens action.  Carlson v. Green, 446 U.S. 14 (1980).

. shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency . . . ."  29 U.S.C. § 794(a).  To state a Rehabilitation Act claim, a plaintiff must allege that: (1) he is a qualified individual with a disability; (2) he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities; (3) such exclusion, denial of benefits, or discrimination was by reason of his disability; and (4) the program or activity received federal financial assistance.

Plaintiff alleges that Warden Ortiz and AHSA Cassano's refusal to accommodate his disability by providing him extra toilet paper was discrimination.  "[A] plaintiff can assert a failure to accommodate as an independent basis for liability under the . . . RA."  Muhammad v. Ct. of Common Pleas of Allegheny Cty., Pa., 483 F. App'x 759, 763 (3d Cir. 2012).  However, "[t]he RA does not permit suits against defendants in their individual capacities."  Iglesias v. True, 403 F. Supp. 3d 680, 688 (S.D. Ill. 2019).  Although not listed as a defendant in this claim, Plaintiff does list the Central Office of the Bureau of Prisons as a defendant in the second amended

complaint.  The Court will permit the Rehabilitation Act claim to proceed against the Bureau of Prisons.

D.    Count Four

Plaintiff describes his final claim as "Delay of Proper Intervention of a Serious Infection, Denial of Emergency Intervention, AND Abandonment of Needed Emergency Medical Attention."  ECF No. 135 at 17.  Plaintiff alleges that he reported "unbearable pain" on January 16, 2016 and again on January 26, 2016.  Id.  He asked for help from the officers on "all shifts," but everyone reported that Plaintiff was fine. Id.  He identifies actions taken wherein he attempted to get medical treatment for his MRSA infection but was rebuffed.

Plaintiff has stated an Eighth Amendment claim for denial of medical treatment against AHSA Cassano, Dr. Ibe, RN West, Medical Officer K. Engert, and the John Doe officers and lieutenants on shift at the relevant times.  The Court will deny the motion to dismiss this claim.

E.    Nurse Copeland

Defendants argue all claims against Nurse Copeland should be dismissed as he is immune from suit.  Nurse Copeland certifies he is a Quality Improvement Infection Control Coordinator at FCI Fort Dix.  ECF No. 120-1 ¶ 1.[3]  He joined the

---

[3]  "[I]n a factual attack under Rule 12(b)(1), the court may consider and weigh evidence outside the pleadings to determine

Public Health Service ("PHS") in 2013.  Id.  "In my position, I am responsible for reporting statistics of the institution's various infections to the Health Department and the Bureau of Prisons. I also conduct infection prevention trainings for staff. I do not provide clinical services to inmates unless during a life-threatening emergency." Id. ¶ 3

Section 233 of the Public Health Act states in relevant part:

> The remedy against the United States provided by sections 1346(b) and 2672 of Title 28. . . for damage for personal injury, including death, resulting from the performance of medical, surgical, dental, or related functions, including the conduct of clinical studies or investigation, by any commissioned officer or employee of the Public Health Service while acting within the scope of his office or employment, shall be exclusive of any other civil action or proceeding by reason of the same subject-matter against the officer or employee (or his estate) whose act or omission gave rise to the claim.

42 U.S.C. § 233(a).  "Section 233(a) grants absolute immunity to PHS officers and employees for actions arising out of the performance of medical or related functions within the scope of their employment by barring all actions against them for such conduct." Hui v. Castaneda, 559 U.S. 799, 806 (2010).  "Even in circumstances in which a Bivens remedy is generally available,

---

if it has jurisdiction." Gould Elecs. Inc. v. United States, 220 F.3d 169, 178 (3d Cir. 2000).

21

an action under <u>Bivens</u> will be defeated if the defendant is
immune from suit." <u>Id.</u> at 807.

   Plaintiff alleges in Count Four that he approached Nurse
Copeland, who told Plaintiff he could have MRSA.  ECF No. 135 at
18.  "Nurse Copeland called over to the hospital, expressed
concern, and ordered Defendant West to immediately examine the
Plaintiff." <u>Id.</u>  Plaintiff argues that Nurse Copeland was aware
of the damage MRSA could do as thirteen inmates had died from
MRSA infections but failed to file the required Clinical Review
Complaint. <u>Id.</u> at 22.  Plaintiff does not dispute that Nurse
Copeland is an officer of the PHS, instead he asserts that
"[a]bsolute Immunity does not let Copeland murder an inmate
while at the medical department.  Copelands specific performance
requirements do not suggest he can commit murder - even if it's
while working at the medical facility to which he is assigned."
ECF No. 151 at 22.  "Copelands emergency medical intervention
for a SARS3 infection being ignored falls under basic Nursing
and medical intervention.  This is not part of his commission
for infectious disease training - it's an emergency medical
intervention being done by an overly qualified medical
personal." <u>Id.</u>

   Plaintiff's complaint alleges Nurse Copeland did not
respond appropriately to his MRSA infection and failed to file a
required form.  He also asserts Nurse Copeland had special

22

knowledge about Plaintiff's condition because Nurse Copeland created a report about the other inmate MRSA-related deaths. ECF No. 135 at 22.  These allegations are all related to Nurse Copeland's position as an Infection Control Coordinator; Plaintiff uses reports created by Nurse Copeland about MRSA's seriousness as evidence of deliberate indifference.  The plain text of § 233 provides Nurse Copeland with absolute immunity, and the Court must dismiss all claims against him.

F.    Federal Tort Claims Act

Plaintiff also invokes the Federal Tort Claims Act in his complaint.  "The FTCA waives sovereign immunity and grants district courts jurisdiction over tort claims against the United States 'under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.'" Gould Elecs. Inc. v. United States, 220 F.3d 169, 179 (3d Cir. 2000) (quoting 28 U.S.C. § 1346(b)(1)) (emphasis omitted), modified on other grounds by Simon v. United States, 341 F.3d 193 (3d Cir. 2003).  "The Government is the only proper defendant in a case brought under the FTCA." CNA v. United States, 535 F.3d 132, 138 n.2 (3d Cir. 2008).

Reviewing the second amended complaint in the light most favorable to Plaintiff, the Court concludes he has stated FTCA claims in Counts Three and Four.  There are sufficient facts

from which this Court can infer the negligence elements of duty, breach, causation, and damages.  The Court will therefore order the Clerk to add the United States as a defendant, and the FTCA claims shall proceed against the United States.

G.    Qualified Immunity

Defendants lastly assert they are entitled to qualified immunity on Plaintiff's claims.  "[O]fficers are entitled to qualified immunity . . . unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'"  D.C. v. Wesby, 138 S. Ct. 577, 589 (2018) (quoting Reichle v. Howards, 566 U.S. 658, 664 (2012)).  The first prong of the analysis "asks whether the facts, [t]aken in the light most favorable to the party asserting the injury, ... show the officer's conduct violated a [federal] right[.]"  Tolan v. Cotton, 572 U.S. 650, 655-56 (2014) (internal quotation marks and citations omitted) (alterations and omissions in original).

The Court denies qualified immunity at this time.  The second amended complaint, when read in the light most favorable to Plaintiff, states claims for violations of the Rehabilitation Act and Eighth Amendment.  A reasonable person would know that failing to accommodate disabilities and denying basic hygiene materials violates the law.  See Small v. Lanigan, No. 13-7642, 2019 WL 145628, at *6 (D.N.J. Jan. 9, 2019) ("Reasonable people

could find that requiring Plaintiff to remain trapped in his own waste for days" violates the Eighth Amendment and ADA); <u>Partelow v. Massachusetts</u>, 442 F. Supp. 2d 41, 50 (D. Mass. 2006) (recognizing that "reasonable access to safe bathing ... constitute[s] a component of civilized living" for purposes of a disabled prisoner's Eighth Amendment claim).  The Court will deny qualified immunity without prejudice.

H.    <u>Motion to Stay</u>

Plaintiff filed a motion to stay the proceedings for 30 days due to his COVID-19 diagnosis.  ECF No. 157.  The Court will dismiss this motion as moot as more than 30 days have elapsed since the motion was filed.

IV.  CONCLUSION

For the reasons set forth above, the Court will grant Defendant's motion to dismiss in part.  Claims One and Two shall be dismissed entirely.  Claim Three shall proceed against Warden Ortiz and AHSA Cassano on the Eighth Amendment claim and against the Bureau of Prisons Central Office on the Rehabilitation Act claim.  Nurse Copeland is dismissed as he is immune from suit; Claim Four shall otherwise proceed.  Plaintiff's motion for a stay shall be dismissed as moot.

An appropriate Order follows.

Dated: March 30, 2021            s/ Noel L. Hillman
At Camden, New Jersey            NOEL L. HILLMAN, U.S.D.J.