UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
                              :
DAVID A. GAMBINO,             :
                              :
        Plaintiff,            :   Civ. No. 17-0830 (NLH) (AMD)
                              :
    v.                        :   OPINION
                              :
                              :
AHSA CASSANO, et al.,         :
                              :
        Defendants.           :
                              :
_____:

APPEARANCES:

David A. Gambino
19757055
115 Shepard Ave
Kenmore, NY 14217

        *Plaintiff Pro Se*

Philip R. Sellinger, United States Attorney
Susan Millensky, Assistant United States Attorney
U.S. Attorney's Office for the District of NJ
970 Broad Street
Suite 700
Newark, NJ 07102

        *Attorneys for Defendants AHSA Cassano, Bureau of Prisons*
*Central Office, Ibe, K. Englert (improperly pled as "K.*
*Engert"), RN West, Warden Ortiz, and United States*

John M. Hockin Jr., Esq.
Ronan, Tuzzio & Giannone
4000 Route 66
One Hovchild Plaza
Tinton Falls, NJ 07753

        *Attorneys for Defendant Diane Schifano, RN*

HILLMAN, District Judge

Defendants Assistant Health Services Administrator ("AHSA") Cassano, Bureau of Prisons Central Office, Ibe, K. Englert (improperly pled as "K. Engert"), RN West, Warden Ortiz, and United States (collectively "Federal Defendants") move for summary judgment on Plaintiff David Gambino's second amended complaint.  ECF No. 186.  They also seek to seal certain portions of their exhibits.  ECF No. 193.  Plaintiff has not filed any opposition to the motions.

For the reasons stated below, the Court will grant the motion to seal.  The motion for summary judgment will be granted in part.

I.  BACKGROUND

On February 8, 2017, Plaintiff filed a pro se complaint alleging inadequate medical care for acute infections, among other claims, by various prison officials at FCI Fort Dix, New Jersey.  The Court granted his in forma pauperis application and permitted the complaint to proceed in part on March 20, 2017.  ECF No. 3.  Specifically, it permitted Plaintiff's Bivens[1] claims against Defendants Cassano, Dr. Ibe, RN West, K. Englert, and IDC RN Copeland to proceed while dismissing Plaintiff's claims

---

[1] Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971).

against John Doe employees of Robert Wood Johnson University Hospital ("RWJ").  Id. at 4.

Defendants filed a motion for summary judgment on July 7, 2017 seeking dismissal on the grounds that Plaintiff failed to exhaust his administrative remedies.  ECF No. 12.  Shortly thereafter, Plaintiff filed a motion to amend the complaint and a "supplemental" complaint which consisted of 45 defendants, was 95 pages long, and asserted new claims under Bivens and added claims under the Federal Tort Claims Act ("FTCA") and the Americans with Disabilities Act ("ADA").  ECF No. 14.  The Court granted the motion on February 1, 2018 as the Federal Defendants conceded Plaintiff was permitted to amend his complaint under Federal Rule of Civil Procedure 15.  ECF No. 36.  The Court indicated it would treat the "supplemental" complaint as the operative pleading.  Id. ¶ 2.

The Federal Defendants moved to dismiss the amended complaint on May 14, 2018.  ECF No. 69.  On July 19, 2018, Plaintiff moved to amend his complaint in order to correct an error on the first page of his complaint and requested the appointment of pro bono counsel.  ECF No. 88.  Magistrate Judge Donio granted both requests; however, the appointment of counsel was limited to addressing the Federal Defendants' motion to dismiss.  ECF No. 99.  All pending motions were "denied without prejudice to the parties' right to refile their motions after

3

counsel for Plaintiff has entered an appearance." ECF No. 100.
Counsel entered an appearance on October 9, 2018, ECF No. 104,
and the parties agreed to hold all deadlines "in abeyance for a
period of thirty (30) days to give pro bono counsel time to meet
and confer with" Plaintiff, ECF No. 105 at 2. Magistrate Judge
Donio conducted a case management conference via telephone on
November 8, 2018. ECF No. 108. Subsequent telephone
conferences took place on November 29, 2018 and February 11,
2019. ECF Nos. 109, 113.

The Federal Defendants refiled their motion to dismiss on
March 29, 2019. ECF No. 120. Pro bono counsel filed opposition
to the motion to dismiss and requested permission to file a
second amended complaint if the Court were inclined to grant the
motion to dismiss. ECF No. 124. Finding that a streamlined
complaint would be in the interests of justice, the Court
dismissed the Federal Defendants' motion without prejudice and
granted Plaintiff leave to file a second amended complaint. ECF
No. 131. Pro bono counsel then requested to be relieved as
counsel as the appointment had been limited to opposing the
motion to dismiss. ECF No. 132. In response, on October 28,
2019, Plaintiff filed a letter requesting, among other things,
that his case move forward without appointed pro bono counsel,
and that he be provided 60 days to file a second amended
complaint. ECF No. 133. Plaintiff filed his second amended

4

complaint on November 21, 2019.  ECF No. 135.  He later filed a
supplement alleging that the Federal Defendants were interfering
with his ability to exhaust his FTCA remedies.  ECF No. 138.

On November 27, 2019, the Federal Defendants filed a letter
noting that Plaintiff's second amended complaint is identical to
the first four claims included in the nine-count complaint that
was filed in 2017.  ECF No. 136.  They asked the Court to reopen
their prior moving brief, Docket No. 120, so that they could
renew that motion to dismiss as to Counts One through Four of
the pleading.  The Federal Defendants stated that they made this
request because a newly filed motion would be identical to the
one previously filed, save for deletion of the parts that solely
address claims Five through Nine, and if Plaintiff had intended
to refile his prior amended complaint in full, the Government's
motion would be wholly identical to its prior one.  The Court
granted pro bono counsel's withdrawal request and directed the
Federal Defendants to decide how to proceed on their motion
within 30 days.  ECF No. 137.  The Federal Defendants renewed
their motion on December 16, 2019.  ECF No. 140.

On March 30, 2021, the Court granted the motion to dismiss
in part.  ECF No. 159.  It dismissed Counts One and Two in their
entirety and Plaintiff's ADA claim in Count Three.  Id.
Defendant Copeland was dismissed based on immunity.  Id.  Count
Three was permitted to proceed against Defendants Ortiz,

Cassano, and the Central Office of the Federal Bureau of Prisons ("BOP").[2]  Id.  The United States was substituted for the BOP on Plaintiff's FTCA claim.  Id.  Count Four proceeded in its entirety.  Id.

The Federal Defendants now move for summary judgment on the following claims against them: an Eighth Amendment claim against Defendants Ortiz and Cassano for allegedly failing to provide Plaintiff with adequate medical care in the form of sufficient toilet paper in January 2017; a Rehabilitation Act claim against the BOP based on Defendants' Cassano and Ortiz alleged refusal to accommodate Plaintiff's disability in January 2017; a FTCA negligence claim against Defendant United States based on Defendants' Ortiz and Cassano alleged failure to provide Plaintiff with adequate medical care and extra toilet paper in January 2017; an Eighth Amendment claims alleging Defendants Cassano, MLP Ibe, Nurse West and Englert failed to provide Plaintiff with adequate medical care for an infection in January 2017; and a FTCA medical malpractice claim against Defendant United States based on Defendants' Cassano, MLP Ibe, Nurse West and Englert alleged failure to provide Plaintiff with adequate

---

[2] In light of Plaintiff's pro se status, the Court construed his ADA claim as a claim under the Rehabilitation Act and permitted that claim to proceed against the Central Office of the Bureau of Prisons.

medical care for his infection in January 2017.  ECF No. 186.
Plaintiff did not file any opposition to the motion.

## II.  STANDARD OF REVIEW

Summary judgment should be granted when the pleadings,
depositions, answers to interrogatories, admissions on file, and
affidavits show that there is no genuine dispute as to any
material fact and that the moving party is entitled to a
judgment as a matter of law.  Fed. R. Civ. P. 56(c).  A disputed
fact is material when it could affect the outcome of the suit
under the governing substantive law.  Anderson v. Liberty Lobby,
Inc., 477 U.S. 242, 248 (1986).  A dispute is genuine if the
evidence is such that a reasonable jury could return a verdict
for the non-moving party.  Id. at 250.  The Court should view
the facts in the light most favorable to the non-moving party
and make all reasonable inferences in that party's favor.  Hugh
v. Butler County Family YMCA, 418 F.3d 265, 267 (3d Cir. 2005).

Initially, the moving party must show the absence of a
genuine issue concerning any material fact.  See Celotex Corp.
v. Carrett, 477 U.S. 317, 323 (1986).  Once the moving party has
satisfied its burden, the non-moving party, "must present
affirmative evidence in order to defeat a properly supported
motion for summary judgment."  Anderson, 477 U.S. at 257.
"While the evidence that the non-moving party presents may be
either direct or circumstantial, and need not be as great as a

preponderance, the evidence must be more than a scintilla."
Hugh, 418 F.3d at 267 (citing Anderson, 477 U.S. at 251).

"An unopposed summary-judgment motion is not tantamount to a default judgment, because the court still must find for itself that there is no genuine dispute of material fact and that the movant deserves judgment as a matter of law." United States v. Brace, 1 F.4th 137, 143 (3d Cir. 2021) (citing Fed. R. Civ. P. 56(a); Anchorage Assocs. v. V.I. Bd. of Tax Rev., 922 F.2d 168, 175 (3d Cir. 1990)). "The moving party is entitled to judgment as a matter of law when the non-moving party fails to make 'a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof.'" Groff v. DeJoy, 35 F.4th 162, 168 n.10 (3d Cir. 2022) (quoting Celotex Corp., 477 U.S. at 323).

## III. DISCUSSION

Plaintiff has not filed any opposition to the Federal Defendants' summary judgment motion. Accordingly, the Court considers the Federal Defendants' statement of facts ("FDSOF"), ECF No. 186-1, to be undisputed for summary judgment purposes. Fed. R. Civ. P. 56(e)(2).[3]

---

[3] The second amended complaint states the alleged violations took place in January 2016. See generally ECF No. 135. "Plaintiff did not arrive at FCI Fort Dix until March 8, 2016." FDSOF ¶ 9. Plaintiff clarified at his deposition that January 2017 is the actual timeframe. Id. ¶ 10. The Court will use January 2017

A.    Failure to Exhaust

The Federal Defendants argue Plaintiff failed to exhaust his administrative remedies for his claim in Count Three that Defendants Cassano and Ortiz failed to provide him with adequate medical attention, causing him to contract a MRSA infection. ECF No. 186-2 at 40.  Under the Prison Litigation Reform Act, ("PLRA"), prisoners must exhaust 'such administrative remedies as are available' before bringing suit to challenge prison conditions." Ross v. Blake, 578 U.S. 632, 635 (2016) (quoting 42 U.S.C. § 1997e(a)).  "[T]hat language is 'mandatory': An inmate 'shall' bring 'no action' (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies." Id. at 638-39 (citing Woodford v. Ngo, 548 U.S. 81, 85 (2007)).  "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." Jones v. Bock, 549 U.S. 199, 211 (2007).  This includes constitutional claims, Woodford, 548 U.S. at 91 n.2, and "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). "A prisoner must exhaust these remedies 'in the literal

---

throughout this opinion as the parties agree on the relevant date.

sense[;]' no further avenues in the prison's grievance process should be available." Smith v. Lagana, 574 F. App'x 130, 131 (3d Cir. 2014) (quoting Spruill v. Gillis, 372 F.3d 218, 232 (3d Cir. 2004)).

A district court may decide whether plaintiffs exhausted their administrative remedies without a jury even if there are disputed facts after providing notice to the parties and an opportunity to submit further evidence. Paladino v. Newsome, 885 F.3d 203, 211 (3d Cir. 2018); Small v. Camden Cty., 728 F.3d 265, 270 (3d Cir. 2013). On May 11, 2022, the Court notified the parties that it would be deciding the exhaustion issue as part of the summary judgment motion and gave the parties time to submit additional materials on that issue. ECF No. 195. Plaintiff did not respond, and the Federal Defendants indicated they would "rely upon the evidence, including the declarations and exhibits, previously filed . . . in support of Federal Defendants' Motion for Summary Judgment." ECF No. 196.

Exhaustion must be proper, meaning "prisoners must 'complete the administrative review process in accordance with the applicable procedural rules,' rules that are defined not by the PLRA, but by the prison grievance process itself." Jones v. Bock, 549 U.S. 199, 218 (2007) (quoting Woodford v. Ngo, 548 U.S. 81, 88 (2007)). "The Bureau of Prisons has established an administrative remedy procedure through which an inmate can seek

formal review of any complaint regarding any aspect of his imprisonment."  Declaration of Corrie Dobovich ("Dobovich Dec."), ECF No. 189 ¶ 6 (citing 28 C.F.R. § 542.10, et seq.). First, "an inmate shall first present an issue of concern informally to staff, and staff shall attempt to informally resolve the issue before an inmate submits a Request for Administrative Remedy."  28 C.F.R. § 542.13(a).  "The deadline for completion of informal resolution and submission of a formal written Administrative Remedy Request, on the appropriate form (BP-9), is 20 calendar days following the date on which the basis for the Request occurred."  28 C.F.R. § 542.14(a).  "An inmate who is not satisfied with the Warden's response may submit an Appeal on the appropriate form (BP-10) to the appropriate Regional Director within 20 calendar days of the date the Warden signed the response."  28 C.F.R. § 542.15(a).[4] "An inmate who is not satisfied with the Regional Director's response may submit an Appeal on the appropriate form (BP-11) to the General Counsel within 30 calendar days of the date the Regional Director signed the response."  Id.  "Appeal to the General Counsel is the final administrative appeal."  Id.

---

[4] These dates are subject to extension "[w]hen the inmate demonstrates a valid reason for delay[.]"  28 C.F.R. § 542.14(a).

According to Dobovich, a BOP legal assistant, "[i]n the ordinary course of business, computerized indexes of all administrative appeals filed by inmates are maintained so that rapid verification may be made as to whether an inmate has exhausted administrative appeals on a particular issue." Dobovich Dec. ¶ 7.  Dobovich's review of "the computerized indexes of all administrative remedies filed by Plaintiff . . . reflect Plaintiff submitted 163 administrative remedies while in the custody of the Bureau of Prisons."  Id. ¶ 8; see also ECF No. 189-1 at 8-91.  On February 8, 2017, Plaintiff submitted a claim to the BOP's Northeast Regional Office, Case No. 891405-R1, "alleg[ing] there was a lack of personal hygiene supplies." Dobovich Dec. ¶ 9; see also ECF No. 189-1 at 36.  The Northeast Regional Office procedurally rejected the request under "code 'SEN INS', because the issue raised was not a sensitive issue and Plaintiff was instructed that he must first file a BP-9 request through the institution for the Warden's review and response before filing an appeal at the regional level."[5] Dobovich Dec. ¶ 10; ECF No. 189-1 at 36.

---

[5] "If the inmate reasonably believes the issue is sensitive and the inmate's safety or well-being would be placed in danger if the Request became known at the institution, the inmate may submit the Request directly to the appropriate Regional Director."  28 C.F.R. § 542.14(d)(1).

On March 1, 2017, Plaintiff filed "an Administrative Remedy appeal with the Warden at FCI Fort Dix, Case No. 891405-F1, in which he alleged there was a lack of personal hygiene supplies." Dobovich Dec. ¶ 11; ECF No. 189-1 at 37.  The remedy was rejected procedurally on March 6, 2017 "code 'INF RSF', because Plaintiff had not attempted informal resolution prior to submitting the administrative remedy, or he had not provided evidence of his attempt at informal resolution." Dobovich Dec. ¶ 11; ECF No. 189-1 at 37.  "The rejection notice instructed Plaintiff that he could resubmit his appeal in the proper form within 15 days of the date of this rejection notice." Dobovich Dec. ¶ 12.  "On April 13, 2017, Plaintiff submitted an Administrative Remedy appeal with the Warden at FCI Fort Dix, Case No. 891405-F2.  On April 14, 2017, Case No. 891405-F2 was rejected procedurally, Code 'RJA OTH', because the appeal was untimely." Dobovich Dec. ¶ 13; ECF No. 189-1 at 40.  Plaintiff was notified that he could "resubmit his appeal along with a memo from staff stating the reason for the untimely filing was not Plaintiff's fault." Dobovich Dec. ¶ 14.  The "Remarks" section of the notice stated that "unit team issued you extra supplies." ECF No. 189-1 at 40 (emphasis omitted).

Plaintiff filed an appeal with the Northeast Regional Office in Case No. 891405-R2 on April 26, 2017.  Dobovich Dec. ¶ 15; ECF No. 189-1 at 40.  It was rejected procedurally on April

27, 2017 under code "DIR OTH" because "the Regional Office concurred with the rationale for institution's rejection and instructed Plaintiff to follow the instructions provided on the prior rejection notice."  Dobovich Dec. ¶¶ 15-16; ECF No. 189-1 at 40.  Plaintiff appealed to the BOP's Central Office, Case No. 891405-A1, on May 17, 2017.  Dobovich Dec. ¶ 17; ECF No. 189-1 at 44.  It was rejected procedurally under code "DIR OTH" on May 31, 2017 because the "Central office concurred with the rationale for the Regional Office's rejection."  Dobovich Dec. ¶¶ 17-18; ECF No. 189-1 at 44.  The notice informed Plaintiff that "if staff provide a memo stating the late filing was not your fault, then re-submit to the level of the original rejection."  ECF No. 189-1 at 44 (emphasis omitted).  "Administrative Remedy records do not reflect that Plaintiff resubmitted any additional remedies in which he alleged there was a lack of personal hygiene supplies or that he submitted any further remedies or appeals regarding Case No. 891405."  Dobovich Dec. ¶ 19.

"The PLRA requires only 'proper exhaustion,' meaning exhaustion of those administrative remedies that are 'available.'"  Rinaldi v. United States, 904 F.3d 257, 266 (3d Cir. 2018) (quoting Woodford v. Ngo, 548 U.S. 81, 93 (2007)).  "The burden to plead and prove failure to exhaust as an affirmative defense rests on the defendant.  But once the

defendant has established that the inmate failed to resort to administrative remedies, the onus falls on the inmate to show that such remedies were unavailable to him." Id. at 268 (internal citations omitted).

The Federal Defendants have provided evidence that Plaintiff did not properly exhaust his claim that Defendants Cassano and Ortiz failed to provide him with adequate hygiene materials. Plaintiff argued in his deposition that he was "100 percent timely and vigorously filing, trying to get mail out and being stopped, being blocked, sending actual legal mail, getting blocked on sending regular mail through many means which were documented through the courts continuously . . . ." Deposition Transcript of David Gambino ("Plaintiff Dep."), ECF No. 186-4 at 101:13-18. He has not supported this claim on summary judgment despite being given a chance to submit additional materials and being notified that the Court would be making factual findings on this issue and. ECF No. 195 (citing Paladino v. Newsome, 885 F.3d 203, 211 (3d Cir. 2018)). "However, 'conclusory, self-serving affidavits are insufficient to withstand a motion for summary judgment.' Instead, [Plaintiff] needed to 'set forth specific facts that reveal a genuine issue of material fact' concerning the exhaustion of these claims." Paladino, 885 F.3d at 208 (quoting Kirleis v. Dickie, McCamey & Chilcote, P.C., 560 F.3d 156, 161 (3d Cir. 2009))(footnotes omitted). In the

15

absence of specific facts supporting Plaintiff's allegation that prison officials "purposefully interfered with his forms," id., the Court concludes there is not a genuine issue of material fact regarding Plaintiff's exhaustion of his Eighth Amendment claim against Defendants Cassano and Ortiz.  Accordingly, the Court will dismiss this claim for failure to exhaust.  42 U.S.C. § 1997e(a).

B.   Denial of Medical Care

Plaintiff's remaining Bivens claim following the Court's March 30, 2021 order alleges that Defendants Cassano, Ibe, West, and Englert denied him adequate medical care for an infection between January 16 and 27, 2017.  ECF No. 135 at 17; FDSOF ¶ 10.[6]

The Supreme Court recognized a Bivens remedy for violations of the Eighth Amendment right to adequate medical care in Carlson v. Green, 446 U.S. 14 (1980).  To state an Eighth Amendment Claim, "a plaintiff must make (1) a subjective showing that 'the defendants were deliberately indifferent to [his or her] medical needs' and (2) an objective showing that 'those needs were serious.'" Pearson v. Prison Health Serv., 850 F.3d 526, 534 (3d Cir. 2017) (quoting Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999) (alteration in original)).  The Federal Defendants do not appear to dispute that Plaintiff's infection

---

[6] The Federal Defendants concede that Plaintiff exhausted this claim under the PLRA.  Dobovich Dec. ¶ 20.

was a serious medical need; therefore, the Court will assume for summary judgment purposes that this element is satisfied.

"Deliberate indifference is a 'subjective standard of liability consistent with recklessness as that term is defined in criminal law.'" Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003) (quoting Nicini v. Morra, 212 F.3d 798, 811 (3d Cir. 2000)). The Third Circuit has found deliberate indifference when "(1) prison authorities deny reasonable requests for medical treatment, (2) knowledge of the need for medical care is accompanied by the intentional refusal to provide it, (3) necessary medical treatment is delayed for non-medical reasons, and (4) prison authorities prevent an inmate from receiving recommended treatment for serious medical needs." Pearson, 850 F.3d at 538.

1.   Defendant Ibe

Defendant Ibe is a BOP "Mid-Level Practitioner (MLP). An MLP is also known as a Physician Assistant (PA)." Declaration of Chigozie Ibe ("Ibe Dec."), ECF No. 187 ¶ 1.[7] Plaintiff alleges Defendant Ibe provided "[l]ess than adequate" medical treatment for his infection. Plaintiff Dep. at 48:12.

> [] Ibe was doing cursory evaluations and downplaying the
> size of the wound and the properties of the wound and
> the qualities of it and falsifying the records as if the

---

[7] The exhibits to Defendant Ibe's declaration are filed under seal as they contain sensitive medical information. ECF No. 191.

> wound was not in need of emergency assistance when it
> was.  Reported the size smaller, he reported the pain
> levels that I was in, he basically made false medical
> records to be able to allow me to persist in pain and
> then he undermedicated on purpose and undertreated on
> purpose.

Id. at 47:25 to 48:9.  He claimed Defendant Ibe gave him

"Ibuprofen or something" when the wound "should have been

drained and instead he allowed it to fester and what made it

worse was he bragged about it in front of inmates . . . ."  Id.

at 48:18-22.

"[T]here is a critical distinction 'between cases where the

complaint alleges a complete denial of medical care and those

alleging inadequate medical treatment.'"  Pearson v. Prison

Health Serv., 850 F.3d 526, 535 (3d Cir. 2017) (quoting United

States ex. rel. Walker v. Fayette Cty., 599 F.2d 573, 575 n.2

(3d Cir. 1979)).  "Because 'mere disagreement as to the proper

medical treatment' does not 'support a claim of an eighth

amendment violation,' when medical care is provided, we presume

that the treatment of a prisoner is proper absent evidence that

it violates professional standards of care."  Id. (quoting

Monmouth Cty. Corr. Inst. v. Lanzaro, 834 F.2d 326, 346 (3d Cir.

1987)).  "[I]t is well established that as long as a physician

exercises professional judgment his behavior will not violate a

prisoner's constitutional rights."  Brown v. Borough of

Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990).

Defendant Ibe "remember[s] treating Plaintiff on January 19, 2017. I encountered Plaintiff at the Health Services Unit as I was ending my 6:00 am to 2:30 pm shift and ready to leave work. I stayed to treat Plaintiff." Ibe Dec. ¶ 7. Plaintiff "complained of a skin infection in his gluteal region, stating that he had boils in at least two areas of his buttock for four days, one of the boils busted two days ago and the pain in that area made him very apprehensive to use the toilet." Id. ¶ 8. Defendant Ibe "examined Plaintiff and noted that there was a 10 mm papule and another one measuring 5 mm in the right and left gluteal regions respectively[.]" Id. Defendant Ibe "assessed him as having an unspecified carbuncle" and "took a culture of the infected area [and] notified the lab personnel that this was a priority lab . . . ." Id. He "prescribed Sulfamethoxazole/Trimeth DS – the brand name is Bactrim – to treat Plaintiff's infection and Ibuprofen to treat Plaintiff's pain; and follow up treatment was to be at sick call and chronic care clinic as needed." Id. "Prior to January 19, 2017, I had successfully treated skin infections with Bactrim. Using my medical training, judgment and experience, and based upon my assessment of Plaintiff's condition, formed after examining him, I determined that Bactrim was an appropriate antibiotic to treat Plaintiff's skin infection." Id.

The lab results reported "that Plaintiff had Methicillin-resistant Staphylococcus aureus, also known as MRSA, a staph infection which was methicillin resistant.  The lab report notes that MRSA was susceptible to Bactrim, listed on the report as Trimethoprim/Sulfa.  Accordingly, the lab report confirmed that Bactrim was an appropriate antibiotic for the treatment of Plaintiff's skin infection."  Ibe Dec. ¶ 12.  Defendant Ibe saw Plaintiff upon his return from RJW and examined the wound and dressings.  Id. ¶ 15.  He "noted that the wound in the left gluteal was dressed and intact, with no bleeding; I noted that his infection had not resolved, but there was no swelling; I issued him a new prescription for Indomethacin, an anti-inflammatory medication, and renewed his Bactrim prescription for ten days."  Id.

It would not be obvious to a layperson that Defendant Ibe breached a professional standard of care in treating Plaintiff's wounds, and Plaintiff has provided no extrinsic proof to support his claim that Defendant Ibe did not use professional judgment.  See Pearson v. Prison Health Serv., 850 F.3d 526, 536 (3d Cir. 2017) ("[I]t makes sense to require a prisoner to offer extrinsic proof regarding the quality of medical care in adequacy of care cases when, to defeat our presumption that the medical care provided to him or her was adequate, the prisoner must show that the medical official did not exercise

20

professional judgment."). The record unmistakably contradicts Plaintiff's claim that Defendant Ibe did nothing and just let Plaintiff "suffer in pain" for being "a pain in our ass . . . ." Plaintiff Dep. at 49:13.[8] Without extrinsic proof that Defendant Ibe's examination, diagnosis, and treatment violated professional standards, there is no genuine issue of fact regarding the adequacy of care. The Court will grant summary judgment to Defendant Ibe.

    2.   Defendant West

    Plaintiff's Fourth Claim also alleges Defendant West violated Plaintiff's Eighth Amendment rights:

> [] Nurse West, along with Ibe, as well, too, all of them were, when I was going there having a medical emergency they were refusing to document that I was there, telling

---

[8] Plaintiff did not hear Defendant Ibe make this alleged comment. He testified at his deposition that two inmate orderlies told him Defendant Ibe made this statement. Plaintiff Dep. at 49:18 to 50:7. He refused to identify one of the alleged witnesses. Id. at 50:6-7. "Hearsay statements that would be inadmissible at trial may not be considered for purposes of summary judgment." Smith v. City of Allentown, 589 F.3d 684, 693 (3d Cir. 2009). Plaintiff's "testimony is double hearsay because it describes a statement that" the inmates made to Plaintiff "about a conversation that" Defendant Ibe "allegedly had with" the inmates. Id. If Defendant Ibe did make the comment to the inmates, "that statement would qualify as an admission by a party opponent and would be admissible under Rule 801(d)(2)(A) of the Federal Rules of Evidence." Id. "However, [Plaintiff] offers [the inmates'] repetition of that alleged statement for the truth of the matter asserted . . . . [The inmates'] repetition is itself therefore hearsay, and it appears to be beyond the reach of any exception to the hearsay rule." Id. at 693-94. The Court will not consider this testimony because Plaintiff has not demonstrated that the inmates could testify at about the remark at trial. Id. at 694.

me to leave immediately or I'm going to the SHU, which
is a really horrible place to go.   During medical
examinations West was downplaying the severity of the
infection and basically telling me, all right, now get
out of here, so they were all working together, in
concert to allow the infection to fester and cause severe
pain and Nurse West was one, as well.   He is in some of
the medical records making comments in regards to the
properties of the wound and the quality of the wound and
stating his comments in regards to it that conflict with
my documents and conflict completely with the medical
procedures when I went to the hospital.

Plaintiff Dep. at 50:11 to 51:2.   Plaintiff stated in his

answers to Defendant United States' first set of

interrogatories:

On 1/19/2017, at 6 am, Plaintiff was withered in pain
and hunched over on a wheelchair found in the unit,
unable to navigate with only one leg used to push it
backwards.   Plaintiff was having trouble breathing,
seeing, thinking, and was forced to slowly push himself
in excruciating pain to the hospital to seek relief.

The on-duty Lieutenants called the hospital and reported
that I needed medical assistance.   I was told that the
hospital stated for me to get myself to medical even
though it was reported that I was hardly able to navigate
— thus the slow journey to the hospital ensued with
severe pain.   Plaintiff presented to Nurse west who
stated "goodbye, you will be on a call out".   I was given
a direct order to leave.

ECF No. 186-9 at 5.

Defendant Cassano summarized Plaintiff's encounter with

Defendant West:[9]

Exhibit 3 (document US00092) is a Clinical Encounter
Administrative Note record, by Nurse Neil West, noting
that Plaintiff came to the Health Services Unit on

_____

[9] The relevant portion of Plaintiff's medical records are filed
on the docket under seal.   ECF No. 190.

> January 19, 2017, at approximately 7:30 am before sick
> call started, complaining that he was not able to take
> a bowel movement due to an infection inside his anal
> area; Plaintiff insisted that he be seen right away as
> a medical emergency; Nurse West placed him in an
> observation room, as he had to attend to another inmate
> with chest pain; Nurse West assessed Plaintiff, finding
> that he was ambulatory and he was breathing easily; Nurse
> West advised Plaintiff that he would be placed on the
> schedule and seen by an MLP; and Plaintiff became irate,
> stating that he would call his family, his family would
> call the Sherriff department "and you will be sorry!"

Declaration of Kevin Cassano ("Cassano Dec.") ECF No. 186-16 ¶ 11.

The version of the January 19, 2017 encounter as documented by Defendant West is generally consistent with Plaintiff's claims.  Both agree that Plaintiff went to Medical Services in the early morning hours seeking medical attention.  The parties also agree the Defendant West told Plaintiff he would be placed on a list to be seen by other medical personnel.  Defendant Ibe examined Plaintiff later that same day, took samples of Plaintiff's wound, and sent the samples to the lab as a priority.  Ibe Dec. ¶¶ 7-8.

Plaintiff has not provided any evidence to rebut the presumption that Defendant West failed to exercise professional judgment on January 19, 2017.  The undisputed facts indicate Defendant West examined Plaintiff and scheduled him for a medical visit later that day, "which indicates that [he] . . . necessarily viewed [Plaintiff's] injury as a serious medical

need."  Gaines v. Busnardo, 735 F. App'x 799, 804 (3d Cir. 2018)

(affirming grant of summary judgment to nurse who put inmate "on

the list to see the doctor that week").  Defendant West

recognized that Plaintiff needed medical assistance and took

steps to ensure that he received it.  Plaintiff's conclusory

allegation that Defendant West was not taking his condition

seriously is not supported in the record before the Court.  "The

actions taken by [defendant] undisputedly indicate that [he]

employed professional judgment, and did not act with the

'obduracy and wantonness' necessary to sustain an Eighth

Amendment violation."  Id. (quoting Whitley v. Albers, 475 U.S.

312, 319 (1986)) (internal citation omitted).  As there is no

genuine issue of fact regarding the adequacy of care, the Court

will grant summary judgment to Defendant West.

    3.   Defendant Englert

    Defendant Englert is a Health Services Assistant at Fort

Dix.  Declaration of Kyle Englert ("Englert Dec."), ECF No. 188

¶ 1.  According to Plaintiff, Defendant Englert

> refused to provide me with my needed medical supplies
> and when I was there in an emergency situation he kicked
> me out of there and refused to document that I was there,
> threatened to put me in the SHU if I came back and
> basically was kind of, like, the enforcer of keeping me
> away from the Medical Unit so that I couldn't get to the
> Medical Unit and document my injuries and my need for
> intervention.  He interfered with my ability to get
> medical attention.

Plaintiff Dep. at 51:7-16.  He claims Defendant Englert was "in charge of medical supply distribution, which he should have had nothing to do with determining whether or not I actually go to Medical and try to receive emergency care, so he intervened as if he was medical and made a medical decision that I don't need medical care."  Id. at 51:22 to 52:2.  "In fact, he said, you know, you look fine to me.  He said now get out of here or you're going to the SHU."  Id. at 52:2-4.

Defendant Englert's declaration is essentially consistent with Plaintiff's alleged facts:

> On the morning of January 19, 2017 - I remember it being before 8:00 am I saw Plaintiff banging aggressively on a door separating the clinical part of the Health Services Unit from a waiting area.  The upper part of the door was glass.  Plaintiff appeared to be angry and demanded to be seen.  I advised Plaintiff that I would check.  As I am not a health care practitioner and I do not make determinations on how quickly an inmate is to be seen for medical care when he presents at sick call with a condition, I wanted to check with Nurse West, whose job it was at that morning's sick call to assess the condition of inmates presenting at sick call for a medical concern before they were seen by any other health care practitioner.  I then talked with Nurse West, who advised me that he had already assessed Plaintiff, Plaintiffs condition was not an emergency and he already had advised Plaintiff that he would be placed on the schedule and seen by an MLP.
>
> I went back to where Plaintiff was standing at the door, opened the door and advised him that he had already been seen and he would be put on the schedule and seen later. Plaintiff was upset with my response, as he was demanding to be seen right away.  He then stated in a loud voice, which could be heard by the other inmates sitting in the waiting area, that he had puss coming out of his anus, that the other inmates present now know his condition

and that I had violated his HIPPA rights.  I advised
Plaintiff that I did not reveal his condition and I did
not violate his rights.  As Plaintiff was being
belligerent, appeared to be angry and was creating a
disturbance, I advised him that he needed to leave and
that he will be seen later.  Plaintiff did not leave at
that time.

When Plaintiff did not leave, I became more concerned
that Plaintiff, who had already behaved inappropriately,
could create more of a problem and compromise security.
At that point, I ordered Plaintiff to leave and told him
that, if he did not go, he would be going to the Special
Housing Unit (SHU).  I issued the order to diffuse the
situation.

Englert Dec. ¶¶ 6-8.  Plaintiff complied with the order to
leave.  Id. ¶ 9.

Defendant Englert is not a medical professional.  Id. ¶ 6;
Plaintiff Dep. at 51:22 to 52:2.  Non-medical prison officials
cannot "be considered deliberately indifferent simply because
they failed to respond directly to the medical complaints of a
prisoner who was already being treated by the prison doctor."
Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993).  "If a
prisoner is under the care of medical experts . . . a non-
medical prison official will generally be justified in believing
that the prisoner is in capable hands.  This follows naturally
from the division of labor within a prison."  Spruill v. Gillis,
372 F.3d 218, 236 (3d Cir. 2004).  "[A]bsent a reason to believe
(or actual knowledge) that prison doctors or their assistants
are mistreating (or not treating) a prisoner, a non-medical

prison official . . . will not be chargeable with the Eighth
Amendment scienter requirement of deliberate indifference." Id.

The undisputed facts on summary judgment show that
Defendant Englert encountered Plaintiff outside Medical Services
in the early morning hours of January 19, 2017.  Plaintiff
requested medical attention from Defendant Englert, and
Defendant Englert consulted with Defendant West, the medical
professional on duty.  Defendant West informed Defendant Englert
that he had already examined Plaintiff, concluded it was not an
emergency, and placed Plaintiff on the list to see an MLP.
Defendant Englert repeated this information to Plaintiff, who
became upset.  Defendant Englert then ordered Plaintiff to leave
the area, and Plaintiff complied.  Plaintiff has not provided
evidence that Defendant Englert prevented him from obtaining
necessary medical care; Plaintiff was seen by Defendant Ibe
later that day.  Nor has Plaintiff provided evidence showing
that Defendant Englert had a reason to believe or actual
knowledge that the medical professionals were either mistreating
or failing to treat Plaintiff.

Plaintiff has also not met his burden for his allegation
that Defendant Englert "refused to provide" Plaintiff's "needed
medical supplies."  Plaintiff Dep. at 51:7-8.  Deliberate
indifference may be shown when "prison authorities prevent an
inmate from receiving recommended treatment for serious medical

27

needs . . . ."   Inmates of Allegheny Cnty. Jail v. Pierce, 612
F.2d 754, 762 (3d Cir. 1979).   Plaintiff alleges he told
Defendant Englert "that he needed extra toilet paper or sanitary
wipes to clean himself with when he falls, can't move, and
[defecates] himself."   ECF No. 186-9 at 6-7.   However, there is
no evidence in the record that a medical professional
recommended that Plaintiff receive extra toilet paper or wipes
as treatment for his medical conditions.   Cassano Dec. ¶ 5
("[T]o the best of my knowledge, no medical provider at FCI Fort
Dix ever authorized Plaintiff to receive sanitary wipes or
additional toilet paper due to his medical condition.").

As part of his Health Services Assistant position,
Defendant Englert "distribute[s] medical supplies to inmates who
were authorized to receive such supplies.   The medical supplies
I distributed to inmates . . . included, but were not limited
to, adult diapers, canes, knee and back braces, eye glasses, and
CPAP machines and supplies for such machines."   Englert Dec. ¶
11.   Plaintiff was authorized to receive adult diapers, see id.
¶ 15, but the second amended complaint does not allege that the
Federal Defendants did not give them to Plaintiff.   See
Plaintiff Dep. at 40:2-4 (agreeing that the BOP provided
Plaintiff adult diapers at Fort Dix).   Defendant Englert "did
not distribute toilet paper or sanitary wipes to inmates.   Those
items were not regarded as medical supplies and were not

distributed in the Health Services Unit.  It is my understanding that toilet paper was distributed to inmates through a process that did not involve the Health Services Unit.  I was not involved in the distribution of toilet paper or sanitary wipes to inmates."  Englert Dec. ¶ 11.  See also Cassano Dec. ¶ 5 ("Toilet paper and sanitary wipes were not regarded as medical supplies that could be distributed by the Health Services Unit.  Accordingly, toilet paper and sanitary wipes were not distributed by the Health Services Unit.").  Plaintiff has failed to carry his burden on summary judgment by showing there is a genuine dispute as to whether Defendant Englert failed to provide him with necessary medical supplies.  The Court will grant summary judgment to Defendant Englert.

    4.   Defendant Cassano

    Defendant Cassano was the AHSA at Fort Dix between August 2014 and January 2019.  Cassano Dec. ¶ 1.  At his deposition, Plaintiff alleged Defendant Cassano "created and maintained an unhealthy medical environment by allowing my emergency medical need to be ignored and supported the staff's false medical recordings to hide such abuse."  Plaintiff Dep. at 46:7-11.  Plaintiff alleged the BOP medical staff "were falsifying the properties of the wound, the size of the wound and the condition of the wound all the way up until [he] made it to the hospital . . . ."  Id. at 47:1-4.  He asserted that "Cassano was told that

[the entries] were incorrect and Cassano was refusing to even
look into them.  He refused to, to do any of his due diligence
that he is required to in his administrative position and he
allowed the medical records to stand and was complacent."  Id.
at 47:10-16.

"[] Government officials may not be held liable for the
unconstitutional conduct of their subordinates under a theory of
respondeat superior."  Ashcroft v. Iqbal, 556 U.S. 662, 676
(2009)).  "Personal involvement can be shown through allegations
of personal direction or of actual knowledge and acquiescence."
Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).
Defendant Cassano states his AHSA "responsibilities, supervisory
and otherwise, covered administrative matters.  FCI Fort Dix's
Clinical Director, who was a medical doctor, supervised the
clinical decisions of employees in the Health Services Unit."
Cassano Dec. ¶ 7.  "I did not make any clinical decisions.
Medical providers, including physicians, Mid-Level Practitioners
(MLPs, who are also known as Physician Assistants or PAs),
paramedics and nurses, were responsible for providing the
medical care to inmates."  Id.  Plaintiff has not submitted any
evidence that Defendant Cassano's supervisory duties included
supervising the medical decisions of Fort Dix's medical staff,
and the Court will not consider him a supervisor for purposes of
Plaintiff's Eighth Amendment claim.

As Defendant Cassano is not a medical professional, Plaintiff must be able to prove that Defendant Cassano had actual knowledge or a reason to believe that the medical staff were either mistreating Plaintiff or not treating him at all. Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004); Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993). Defendant Cassano denies seeing any BOP healthcare provider make false entries in Plaintiff's records, being aware of any alleged false entries, being aware of any BOP healthcare provider making light of Plaintiff's infection, or seeing any indication that any BOP healthcare provider "delayed medically necessary treatment of Plaintiff for non-medical reasons or prevented him from receiving medically necessary or recommended treatment." Cassano Dec. at ¶¶ 25-28. Plaintiff's personal opinion that the Fort Dix medical staff falsified the properties, size, and condition of his wound is not supported by evidence in the record. See Pearson v. Prison Health Serv., 850 F.3d 526, 535 (3d Cir. 2017) ("[M]ere disagreement as to the proper medical treatment does not support a claim of an eighth amendment violation . . . ." (cleaned up)). Nor does his subsequent treatment at RWJ prove that Fort Dix's medical team failed to exercise their medical judgment. White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990) ("If a plaintiff's disagreement with a doctor's professional judgment does not state a violation of the

31

Eighth Amendment, then certainly no claim is stated when a doctor disagrees with the professional judgment of another doctor." (emphasis omitted)).

There is no evidence in the record from which a reasonable factfinder could conclude that Defendant Cassano had a reason to believe or actual knowledge that that the medical staff were mistreating Plaintiff.  The Court will grant summary judgment to Defendant Cassano.

5.   Qualified Immunity

The Federal Defendants also assert they are entitled to qualified immunity on Plaintiff's claims.  "[O]fficers are entitled to qualified immunity ... unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'"  D.C. v. Wesby, 138 S. Ct. 577, 589 (2018) (quoting Reichle v. Howards, 566 U.S. 658, 664 (2012)).  The first prong of the analysis "asks whether the facts, [t]aken in the light most favorable to the party asserting the injury, ... show the officer's conduct violated a [federal] right[.]"  Tolan v. Cotton, 572 U.S. 650, 655-56 (2014) (internal quotation marks and citations omitted) (alterations and omissions in original).

Because the Court has granted summary judgment to the individual defendants on the merits of Plaintiff's claims, it is unnecessary to address their qualified immunity argument beyond

noting that the evidence viewed in the light most favorable to Plaintiff does not show a constitutional violation.  As Plaintiff cannot satisfy the first requirement, the individual defendants would be entitled to qualified immunity as well as judgment on the merits for these claims.

C.    Federal Tort Claims Act

Plaintiff has two FTCA claims against the United States: a negligence claim based on Defendants' Ortiz and Cassano alleged failure to provide Plaintiff with adequate medical care and extra toilet paper in January 2017, and a medical malpractice claim based on Defendants' Cassano, Ibe, West and Englert alleged failure to provide Plaintiff with adequate medical care for his infection in January 2017.  FDSOF ¶¶ 4, 11

"The FTCA waives sovereign immunity and grants district courts jurisdiction over tort claims against the United States 'under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.'"  Gould Elecs. Inc. v. United States, 220 F.3d 169, 179 (3d Cir. 2000) (quoting 28 U.S.C. § 1346(b)(1)) (emphasis omitted), modified on other grounds by Simon v. United States, 341 F.3d 193 (3d Cir. 2003).  This waiver of sovereign immunity is limited, however.

The act "provides that an 'action shall not be instituted upon a claim against the United States for money damages' unless

33

the claimant has first exhausted his administrative remedies."
McNeil v. United States, 508 U.S. 106, 107 (1993) (quoting 28
U.S.C. § 2675(a)).  "Both the Supreme Court and our Court have
held that this exhaustion requirement is jurisdictional."  Knapp
v. United States, No. 21-1523, 2022 WL 3657184, at *4 (3d Cir.
Aug. 25, 2022) (unpublished) (citing McNeil, 508 U.S. at 113;
Shelton v. Bledsoe, 775 F.3d 554, 569 (3d Cir. 2015)).

To exhaust his administrative remedies, a plaintiff suing
under the FTCA must present the offending agency with notice of
the claim, including a "sum certain" demand for monetary
damages.  White-Squire v. U.S. Postal Serv., 592 F.3d 453, 457
(3d Cir. 2010).  Exhaustion occurs when either the agency denies
the claim or six months have passed without a written denial of
the claim.  28 U.S.C. § 2675(a).  The exhaustion requirement
applies to all FTCA plaintiffs regardless of their pro se or
incarcerated status.  Shelton, 775 F.3d at 569; Wadhwa v.
Nicholson, 367 F. App'x 322, 325 n.5 (3d Cir. 2010).

The BOP's records indicate that Plaintiff filed
Administrative Tort Claim TRT-NER-2019-07123 and Administrative
Tort Claim TRT-NER-2019-07136 with the BOP's regional office on
August 27, 2019.  Dobovich Dec. ¶¶ 22, 24; ECF No. 189-2 at 12-
23, 29-35.  Claim TRT-NER-2019-07123 "sought monetary
compensation in the amount of 6,000,000.00 for an alleged delay
in proper intervention of a serious infection, denial of

34

emergency intervention and abandonment of needed emergency medical attention." Dobovich Dec. ¶ 22. Claim TRT-NER-2019-07136 "sought monetary compensation in the amount of 7,300,000.00 and alleged that [Plaintiff] was denied 'accommodations' of toilet paper and subjected to cruel and unusual conditions of confinement which resulted in him contracting a MRSA infection." Id. ¶ 23.

The BOP denied Claim TRT-NER-2019-07123 on September 30, 2019 because Plaintiff "failed to submit [his] administrative claim within the time restrictions contained in the applicable statutes and federal regulations." ECF No. 189-2 at 25 (citing 28 U.S.C. § 2401(b)). It denied Claim TRT-NER-2019-07136 on September 30, 2019 because Plaintiff did "not allege[] a physical injury actionable under the Federal Tort Claims Act. 28 U.S.C. § 1346(b)(2)." Id. at 37. "Specifically, you allege from January 2016 to 2018, you were denied accommodations of toilet paper, cruel and unusual conditions of confinement, and barbaric conditions that resulted in medical emergency and contraction of a MRSA infection. You contend an intentional infliction of emotional distress." Id.

"McNeil clarified that administrative exhaustion must be complete before instituting suit, and that this procedural rule is a requirement to which all litigants must adhere." Wadhwa, 367 F. App'x at 325 n.5 (emphasis in original).

"[A]dministrative exhaustion must be complete <u>before</u> a party may institute a civil action in District Court under the FTCA." <u>Id.</u> at 325 (emphasis in original). "[T]he subsequent filing and denial of a claim after suit has been commenced does not overcome the failure to exhaust administrative remedies and premature filing of the complaint." <u>Priovolos v. Fed. Bureau of Investigation</u>, 686 F. App'x 150, 152 (3d Cir. 2017). <u>See also McNeil</u>, 508 U.S. at 111–12 (holding that a court is without jurisdiction to rule on a prematurely filed action even if an agency denies the related administrative claim soon after the federal lawsuit is filed); <u>Accolla v. U.S. Gov't</u>, 369 F. App'x 408, 410 (3d Cir. 2010) (per curiam) (holding that "because [plaintiff] filed his FTCA action in federal court before" he filed an amendment with the agency "and before the expiration of the appropriate six month period, the District Court was without jurisdiction to rule on the FTCA claim").

Plaintiff first mentioned his FTCA claims on July 14, 2017 when he submitted his first amended complaint. ECF No. 14. Plaintiff must have completed exhaustion by this date for this Court to have jurisdiction over the FTCA claims; however, he did not begin the administrative process on these claims until August 2, 2019. Plaintiff Dep. at 104:7-10. He attempted to explain this delay at his deposition:

36

I believe the only reason why I would wait to ever file anything is because I needed to have full exhaustion according to the process. I think that there came a point — you know, I know that before you file anything you have to exhaust and there just comes a point when the Bureau of Prisons fails to finally answer and you have to just step over and say their failure to speak shouldn't stop me from moving forward so I'm assuming that the statute of limitations was probably playing a role in me having to file this, teetering between exhaustion and statute of limitations. I can't allow the Bureau of Prisons to wait out my statute of limitations before my claim is fully exhausted and I believe that that would be one of the reasons why I would be filing everything like that, is so that I can fairly, you know, readdress the situation in court within the statute of limitations. I was in prison at the time so, you know, I didn't have the access to things like I do today.

Id. at 104:19 to 105:14. He further argued:

[] I do know that in order to file anything in the Federal Courts you have to have full exhaustion. I do know that before I could even file the Rehabilitation Act I had to exhaust through the EEO and with the Federal tort claims, you know, when it was time to file I believe I amended the complaint and added the – and added them in so I think as a matter of course I amended properly and in doing so when I did amend I did add the tort claims, so I think I was following the basic court procedures for amending and adding claims such as tort claims. I think that if I didn't do it correctly I would have probably heard about it by now.

Id. at 106:19 to 107:7. The exhaustion process for FTCA claim is separate and distinct from the exhaustion process for Bivens claims. Plaintiff did not need to use the BOP's internal remedy process for his FTCA claims as the FTCA exhaustion process is set by statute.

Plaintiff also claimed that FCI Gilmer, West Virginia, prevented him from submitting FTCA claims before August 2, 2019:

> [Gilmer] was actively denying me because I was an indigent inmate with no money. I was dependent upon the facility to provide me with copies, writing supplies, stamps and the facility was actively refusing to give me anything and it was causing an abrupt stop in all of my legal matters. I had to then focus my efforts on trying to get the Federal Court to intervene and to stop them from violating my rights was actively denying me because I was an indigent inmate with no money. I had to then focus my efforts on trying to get the Federal Court to intervene and to stop them from violating my rights and it was very difficult to function and even respond to any of the grievances because they were refusing to provide me with legal stamps.

Id. at 107:17 to 108:3. Plaintiff has alleged to this Court on a few occasions that prison officials at FCI Gilmer were denying him access to legal writing materials and mailing supplies. See ECF Nos. 138 & 139. However, Plaintiff was housed in Fort Dix when he moved to amend his complaint in July 2017, see ECF No. 14 at 95, so FCI Gilmer's alleged interference in 2019 cannot explain why Plaintiff did not exhaust his remedies before July 2017. His cursory assertion that Fort Dix also denied him access is non-specific and does not create a genuine dispute of material fact on summary judgment. See Plaintiff Dep. at 108:7-11 (claiming "the same situation was happening when I — before I went to Gilmer. This is the same argument I brought up in this case about them denying me the same access in FCI Fort Dix . . . .").

38

The Court lacks jurisdiction over Plaintiff's FTCA claims because he did not complete exhaustion before he filed his amended complaint.  "The subsequent filing of an amended complaint cannot undo the fact that the suit was initiated before administrative exhaustion was achieved." Stile v. Hollingsworth, No. 17-2693, 2020 WL 2992046, at *4 (D.N.J. June 4, 2020), reconsideration granted on other grounds sub nom. Stile v. Warden Jordan Hollingsworth, No. 17-2693, 2021 WL 302912 (D.N.J. Jan. 29, 2021).  Plaintiff's FTCA claims are dismissed without prejudice for lack of jurisdiction.

D.   Rehabilitation Act

Plaintiff's Rehabilitation Act claim against the BOP relies on Plaintiff's allegation that Defendants Cassano and Ortiz failed to provide him with adequate medical attention, causing him to contract a MRSA infection.  ECF No. 135 at 14. "Plaintiff had explained to AHSA Cassano that when he frequently falls and defecates in his adult diapers, he is left with using his bare hands to wipe and scoop away feces that gets squashed under and all around the Plaintiff's buttocks, legs, testicles and backside."  Id.  "AHSA Cassano refused to supply the patient with accommodations and stated that he would 'be asking for toothpaste and toothbrush next.'"  Id.  Plaintiff states Defendant Ortiz "backed" AHSA Cassano's decision.  Id. Plaintiff alleges that Defendant Ortiz and AHSA Cassano's

refusal to accommodate his disability by providing him extra toilet paper was discrimination.[10]

Under the Rehabilitation Act, "[n]o otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency ...." 29 U.S.C. § 794(a). To state a Rehabilitation Act claim, a plaintiff must allege that: (1) he is a qualified individual with a disability; (2) he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities; (3) such exclusion, denial of benefits, or discrimination was by reason of his disability; and (4) the program or activity received federal financial assistance. "[A] plaintiff can assert a failure to accommodate as an independent basis for liability under the ... RA." Muhammad v. Ct. of Common Pleas of Allegheny Cty., Pa., 483 F. App'x 759, 763 (3d Cir. 2012).

---

[10] The Court dismissed the Rehabilitation Act claims against Defendants Cassano and Ortiz in its March 30, 2021 opinion and order because the Rehabilitation Act does not permit suits against defendants in their individual capacities. ECF No. 159. See also A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 804 (3d Cir. 2007) ("Suits may be brought pursuant to Section 504 against recipients of federal financial assistance, but not against individuals.").

"[] Section 504 does not waive sovereign immunity for damages claims against federal agencies . . . ." Kowalski v. Postmaster Gen. of United States, 811 F. App'x 733, 737 (3d Cir. 2020). See also Lane v. Pena, 518 U.S. 187, 197 (1996) ("Congress has thus spoken to the question of remedies in § 505(a)(2), the only 'remedies' provision directly addressed to § 504 violations, and has done so in a way that suggests that it did not in fact intend to waive the Federal Government's sovereign immunity against monetary damages awards for Executive agencies' violations of § 504(a)."). Thus, Plaintiff cannot receive monetary damages from the BOP on his Rehabilitation Act claim.

Furthermore, any ability to obtain injunctive relief is moot due to Plaintiff's release from BOP custody. See FDSOF ¶ 2 ("Plaintiff completed his term of federal imprisonment and was released, pursuant to a good conduct time release, on October 29, 2020."). "[A] prisoner lacks standing to seek injunctive relief if he is no longer subject to the alleged conditions he attempts to challenge." Weaver v. Wilcox, 650 F.2d 22, 27 (3d Cir. 1981). The Court will grant summary judgment on Plaintiff's Rehabilitation Act claim against the BOP.[11]

---

[11] The Court will dismiss Defendants John Doe Representative of Northeast Office, Northeast Office Bureau of Prisons, and John Doe representative of Northeast Office of BOP as part of this claim.

41

E.    Remaining Defendants

The Court's March 30, 2021 decision dismissed Counts One and Two in their entirety.  ECF No. 159.  These claims were alleged against Defendants Ortiz, Officer Hamel, Unit Manager O'Cone, Counselor Centeno, Special Housing Unit John Does 1-4, John Doe Lieutenant of Special Housing Unit, John Doe Intake Psychologist, and Counselor Jose.  ECF No. 135 at 9-12.  The Court also dismissed Defendant Copeland based on his immunity to suit.  These defendants were inadvertently not dismissed on the docket, so the Court will instruct the Clerk to do so by Order entered in conjunction with this Opinion.

The Court permitted Count Four to proceed in part against the Federal Defendants as discussed above.  ECF Nos. 158 & 159. Although it was implied that the Court concluded that Plaintiff's second amended complaint did not state a claim against the other named defendants, the Court now makes that explicit for clarity's sake.  See also 28 U.S.C. § 1915(e)(2) (B)(ii) (requiring the Court to "dismiss the case at any time if the court determines that the action or appeal fails to state a claim on which relief may be granted").

The second amended complaint does not refer to Defendants Vudarla and Maruska outside of the naming of the parties, and the single mention of Defendant Wawrzyniak does not support a plausible inference of liability.  See ECF No. 135 at 6,7, and

42

21.  Nor do Plaintiff's stated facts about Defendant Fletcher plausibly suggest that he was deliberately indifferent to Plaintiff's medical care.  See id. at 21-22 (stating that "Plaintiff was promptly sent to the emergency room" after being screened by Defendant Fletcher).  Plaintiff did not state a claim in Count Four against Defendants Wawrzyniak, Fletcher, Maruska, or Vudarla for violations of the Eighth Amendment, and the Court dismisses these defendants under § 1915.

On September 19, 2022, the Court granted summary judgment to Defendant Schifano, a nurse employed by RWJ in Hamilton, New Jersey.  ECF No. 198.  The Court will now dismiss Defendant RWJ as well since the second amended complaint does not state a claim against the hospital.  28 U.S.C. § 1915(e)(2)(B)(ii).

Finally, the Court will dismiss the unnamed defendants from this action: Unnamed Nurses 1 and 2, Unnamed Officers 1-4, Unnamed Lieutenants 1 and 2, John Doe Officers 1-16, Lieutenant John Doe 1-2, and John Doe Medical Personnel at FCI Fort Dix.  Despite the close of discovery some months ago, Plaintiff has failed to identify these unnamed defendants.  Because Plaintiff has failed to identify them and because the time for doing so has since past, the Court must dismiss them without prejudice on its own motion pursuant to Federal Rule of Civil Procedure 21.

Federal Rule of Civil Procedure 21 provides that "on motion or on its own, the court may at any time, on just terms, add or

Case 1:17-cv-00830-NLH-AMD   Document 199   Filed 09/28/22   Page 44 of 48 PageID: 3104

drop a party." Fed. R. Civ. P. 21.  See also Blakeslee v. Clinton County, 336 F. App'x 248, 250 (3d Cir. 2009) (affirming dismissal of Doe defendants pursuant to Rule 21).  "Use of John Doe defendants is permissible in certain situations until reasonable discovery permits the true defendants to be identified.  If reasonable discovery does not unveil the proper identities, however, the John Doe defendants must be dismissed." Id.  See also Scheetz v. Morning Call, Inc., 130 F.R.D. 34, 37 (E.D. Pa. 1990) ("Fictitious parties must eventually be dismissed ... if discovery yields no identities.").

Plaintiff has had more than enough time to allow him to identify the individual unnamed defendants and thereafter to amend the complaint.  Plaintiff has failed to do so.  As such, the Court must dismiss the unnamed defendants.  See Blakeslee, 336 F. App'x at 250-51; Adams v. City of Camden, 461 F. Supp. 2d 263, 271 (D.N.J. 2006) (holding that, after a reasonable period of discovery has passed, "[i]t is appropriate, before proceeding to trial, to eliminate [the] fictitious defendants from [an] action under Fed. R. Civ. P. 21.").

F.   Motion to Seal

The Federal Defendants move to seal certain exhibits of their summary judgment motion: Exhibits 1 to 15 of Defendant Cassano's Declaration, ECF No. 190; Exhibits 1 to 7 of Defendant Ibe's Declaration, ECF No. 191; and

Exhibits 2 to 3 of Defendant Englert's Declaration, ECF No. 192. ECF No. 193.

"It is well-settled that there exists, in both criminal and civil cases, a common law public right of access to judicial proceedings and records." In re Cendant Corp., 260 F.3d 183, 192 (3d Cir. 2001). "The public's right of access extends beyond simply the ability to attend open court proceedings. Rather, it envisions a pervasive common law right to inspect and copy public records and documents, including judicial records and documents." Id. (internal citations and quotation marks omitted). "Summary judgment proceedings are no exception — documents filed in connection with a motion for summary judgment are judicial records." In re Avandia Mktg., Sales Pracs. & Prod. Liab. Litig., 924 F.3d 662, 672 (3d Cir. 2019).

A party seeking to seal portions of the judicial record from public view "bears the heavy burden of showing that 'the material is the kind of information that courts will protect' and that 'disclosure will work a clearly defined and serious injury to the party seeking closure.'" Miller v. Indiana Hosp., 16 F.3d 549, 551 (3d Cir. 1994) (quoting Publicker Indus., Inc. v. Cohen, 733 F.2d 1059, 1071 (3d Cir. 1984)). In deciding a motion to seal, the Court considers

(a) the nature of the materials or proceedings at issue;

45

    (b) the legitimate private or public interest which warrants the relief sought;

    (c) the clearly defined and serious injury that would result if the relief sought is not granted;

    (d) why a less restrictive alternative to the relief sought is not available;

    (e) any prior order sealing the same materials in the pending action; and

    (f) the identity of any party or nonparty known to be objecting to the sealing request.

L. Civ. R. 5.3(c)(3).  "To that end, the District Court must conduct a document-by-document review of the contents of the challenged documents."  In re Avandia Mktg., 924 F.3d at 673 (internal quotation marks and brackets omitted).

The Federal Defendants seek to seal portions of Plaintiff's medical records as part of their summary judgment motion.  "The medical records contain information relevant to this case and to Federal Defendants' motion for summary judgment.  However, as this Court's Local Civil Rule 5.3 notes, caution should be taken when filing medical records."  ECF No. 193-1 at 4.  "Accordingly, and because disclosure of Plaintiff's medical records to the public, via publication on the Court's docket, is unnecessary, Federal Defendants seek to seal those medical records used as exhibits to the Cassano, Ibe and Englert Declarations."  Id.

The Court will grant the motion to seal.  The listed
exhibits contain sensitive medical information about Plaintiff's
wounds.  The detailed descriptions of the wounds in Plaintiff's
groin and anal area, as well as other information in the
records, go beyond the information that is necessary for the
Court to decide the Federal Defendants' summary judgment motion.
Furthermore, Defendants Cassano, Ibe, and Englert have
summarized the relevant portions of the records in their public
declarations.  See, e.g., Cassano Dec. ¶¶ 10-24.  This permits
the reasons for the Court's decision to be accessible to
Plaintiff and the public without exposing the more intimate
details of Plaintiff's medical conditions and treatment.  The
Court finds that sealing the exhibits balances the public's
right to access judicial records and Plaintiff's right to have
public proceedings with Plaintiff's privacy interest.

IV.  CONCLUSION

For the reasons set forth above, the Court will grant the
Federal Defendants' motion to seal certain summary judgment
exhibits.  Summary judgment will be awarded to Defendants Kevin
Cassano, Chigozie Ibe, Kyle Englert, Warden Ortiz, RN Neil West,
Bureau of Prisons Central Office, John Doe Representative of
Northeast Office, Northeast Office Bureau of Prisons, and John
Doe representative of Northeast Office of BOP.  Plaintiff's FTCA
claims will be dismissed for lack of jurisdiction.  Defendants

Robert Wood Johnson Hospital, Wawrzyniak, Fletcher, Maruska, and

Vudarla will be dismissed for failure to state a claim, 28

U.S.C. § 1915(e)(2) (B)(ii), and the unnamed defendants will be

dismissed under Federal Rule of Civil Procedure 21.

An appropriate Order follows.


Dated: September 28, 2022        s/ Noel L. Hillman
At Camden, New Jersey            NOEL L. HILLMAN, U.S.D.J.